UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 20-cr-224 (WMW/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| ANDREW JAMES NEADEAU (5), | |
| Defendant. | |

---

This matter comes before the undersigned United States Magistrate Judge upon Defendant Andrew James Neadeau's ("Defendant") Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 79]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on April 26, 2021, regarding the parties' pretrial motions at which the parties requested the opportunity to submit supplemental briefing on the present motion. The supplemental briefing was completed on May 25, 2021, and this Court took Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 79], under advisement on May 25, 2021.[1]

For reasons discussed herein, the Court recommends that Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 79], be **DENIED**.

---

[1] The Court addressed the parties' pretrial discovery motions by separate order. [Docket No. 110].

## I. BACKGROUND AND STATEMENT OF FACTS

### A. Background

Defendant is charged with one count of conspiracy to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Indictment [Docket No. 1]).

### B. Facts

On April 22, 2020, Red Lake Drug Task Force Officer James D. Veit ("Officer Veit") with the Red Lake Department of Public Safety filed a tribal court application for a search warrant to authorize the search of the Mary Ann Brun residence which is located in the Red Lake Indian Reservation (the "Residence"). (Gov't's Ex. 1).[2]

In the affidavit filed in support of the April 22, 2020, Search Warrant, Officer Veit stated that on April 21, 2020, he "was advised by a concerned citizen regarding two overdoses that had just taken place." (Gov't's Ex. 1 at 5). Officer Veit further stated that "[t]he concerned citizen provided messages between them and Tara Lussier," and in those messages, "Tara Lussier advised that she sold the perc 30s to David Jourdain and he sold them to the two overdose victims." (Id.).

In addition, Officer Veit stated that on April 22, 2020, he was informed by a confidential informant "that [Defendant] is selling Fentanyl laces [sic] 30s (Perc 30s)." (Id.). Officer Veit also stated that he was informed on April 22, 2020, "by a concerned citizen that [Defendant] and Tara Lussier are in a relationship with each other," and "they reside at the Mary Ann Brun residence located behind the new IGA." (Id.).

On April 22, 2020, the Honorable Chris Allery, Associate Judge of the Red Lake Tribal Court, determined that probable cause existed to support the issuance of the April 22, 2020, Search

---

[2] Government's Exhibit 1 is the warrant application, supporting affidavit, and warrant to search the Residence. At the Motions Hearing, the Government, without objection, offered the warrant application, supporting affidavit, and warrant into evidence as Government's Exhibit 1. (April 26, 2021, Motion Hearing, Digital Record at 1:41:20–1:42:00).

2

Warrant now at issue. (Id. at 5–6). The April 22, 2020, Search Warrant authorized the search of the Residence for controlled substances and items or records associated with the possession and distribution of controlled substances. (Id. at 5). Thereafter, the April 22, 2020, Search Warrant was executed by Officer Veit. (Def.'s Mem. [Docket No. 111], at 1; Gov't's Mem. [Docket No. 114], at 2–3).

## II. DEFENDANT'S PRETRIAL MOTION FOR SUPPRESSION OF ALL EVIDENCE OBTAINED PURSUANT TO THE EXECUTION OF A SEARCH WARRANT [Docket No. 79]

Defendant moves the Court for an Order suppressing all physical evidence obtained from the execution of the April 22, 2020, Search Warrant. (Def.'s Mem. [Docket No. 111]). Specifically, Defendant contends that any evidence seized pursuant to the April 22, 2020, Search Warrant "must be suppressed because the search warrant application (Exhibit 1) fails to establish a nexus between the alleged criminal activity and the [Residence]." (Id.).[3]

### A. Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of

---

[3] The Court notes that at the Motions Hearing, the Government stated on the record that it was not challenging Defendant's standing to bring the present motion to suppress. (April 26, 2021, Motion Hearing, Digital Record at 1:42:10–1:42:50).

3

everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 9–cr–239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)) (alterations in original). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B. Analysis**

Defendant contends that the April 22, 2020, Search Warrant "lacked probable cause to show that there would be drugs located at the [Residence]" because it "failed to establish a nexus between the drug activity and the [Residence]." (Def.'s Mem. [Docket No. 111], at 2–3).

4

Defendant further contends that "[t]he good faith exception does not apply because the search warrant application lacked any nexus between the alleged drug activity and the [Residence] so that a reasonable officer would not rely on the warrant." (Id. at 3–5). Therefore, Defendant argues that any evidence seized pursuant to the April 22, 2020, Search Warrant should be suppressed. (Id. at 5).

Probable cause determinations "d[o] not deal with hard certainties, but with probabilities." Gates, 462 U.S. at 231. "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

To establish probable cause for the issuance of a search warrant, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue[.]" United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999) (citing United States v. Christenson, 549 F.2d 53, 57 (8th Cir. 1977)). Additionally, whether probable cause exists to support the issuance of a search warrant depends on the totality of the circumstances: "[i]n determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning." United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001).

Considering the affidavit submitted in support of the April 22, 2029, Search Warrant which authorized law enforcement to search the Residence, Judge Allery could reasonably have concluded that there was a fair probability that evidence of the possession and distribution of controlled substances would be found at the Residence. Thus, the affidavit established a nexus between the evidence to be searched for and the Residence.

Specifically, the Court notes that Officer Veit provided details indicating that he was informed by a confidential informant that Defendant was selling fentanyl laced perc 30s. (Gov't's Ex. 1 at 5). Officer Veit also provided details indicating that a concerned citizen informed Officer Veit that Co-Defendant Tara Lussier herself had informed the concerned citizen that she had sold the perc 30s that were involved in two recent overdoses. (Id.). Moreover, Officer Veit had also stated that he was informed by a concerned citizen that Defendant and Tara Lussier were in a relationship, and they both lived at the Residence. (Id.).

The Court first considers whether the information upon which the application was based was reliable. "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)). "If [some] information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." Williams, 10 F.3d at 593–94 (citations omitted).

Here, Officer Veit provided in the affidavit that the confidential informant involved in this case "has provided information in the past which has been independently corroborated by law

6

enforcement," and the confidential informant "is voluntarily working with law enforcement against their own penial interest." (Gov't's Ex. 1 at 5). Officer Veit also indicated in the affidavit that multiple sources had informed law enforcement that Defendant and Co-Defendant Lussier were involved in the distribution of a controlled substance, which the sources specifically identified as perc 30s. (See, Id.). The similar facts provided by the independent sources corroborate each other, and they are emphasized by the fact that the present record indicates that Defendant and Co-Defendant Lussier are in a relationship and both live at the Residence. (See, Id.). In addition, a concerned citizen provided Officer Veit with messages between the Co-Defendant Lussier and the concerned citizen which further corroborated the reported involvement in the distribution of perc 30s. (See, Id.). Accordingly, this Court concludes that the issuing Tribal Court Judge had a substantial basis on which to conclude that the information provided by the sources was reliable. See, e.g., Fulgham, 143 F.3d at 401.

    The Court next considers whether the information provided in the affidavit was sufficient to establish a nexus between the reported distribution of controlled substances and the Residence. Defendant contends that because the affidavit does not specifically allege that controlled substances were sold from the Residence, controlled substances were stored in the Residence, there was heavy foot traffic at the Residence, or evidence of controlled substances was found in garbage from the Residence, "[t]he search warrant failed to establish probable cause to search the [Residence]." (Def.'s Mem. [Docket No. 111], at 3). However, while the inclusion of those allegations would have undoubtedly strengthened the connection between the Residence and the alleged criminal activity, their absence did not preclude Judge Allery from finding probable cause existed.

7

As noted above, the affidavit indicated that two individuals, Defendant and Co-Defendant Lussier, were involved in the distribution of controlled substances, namely perc 30s, and both resided at the Residence. "[M]agistrates are entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense . . . ." United States v. Penaloza-Romero, No. 14-cr-289(8) (SRN/JSM), 2015 WL 3742994, at *14 (D. Minn. June 15, 2015) (alterations in original) (quoting United States v. Caswell, 436 F.3d 894, 899 (8th Cir. 2006)). And, "it is well known that drug traffickers routinely keep packaging equipment, ledgers, and other incriminating items in their living quarters . . . ." United States v. Etheridge, No. 98-1977, 1998 WL 792467, at *1 (8th Cir. Nov. 17, 1998); see also, United States v. Hulett, 22 F.3d 779, 780 (8th Cir. 1994) ("Few places are more convenient tha[n] one's residence for use in planning criminal activity and concealing the fruits of a crime."); United States v. Meyers, 05-68(01-01)(JMR/RLE), 2005 WL 8163349, at *6 (D. Minn. June 1, 2005) (noting that in the Eighth Circuit, it is recognized "that persons engaged in drug trafficking routinely maintain evidence of their criminal activity in their residences"). Accordingly, this Court concludes that the issuing Tribal Court Judge had a substantial basis on which to conclude that a nexus existed between the alleged distribution of controlled substances and the Residence.

Therefore, this Court finds that the affidavit articulated a sufficient basis upon which to find that a fair probability existed that the search would uncover evidence of a crime, as well as, a sufficient basis upon which to demonstrate a nexus between the evidence to be searched for and the Residence to be searched; thus, there was probable cause for Judge Allery to issue the April 22, 2020, Search Warrant.

In addition, assuming solely for the sake of argument that the affidavit of Officer Veit was not sufficient to establish probable cause or a nexus between the items to be searched for and the

place to be searched, the Court concludes that officers relied in good faith on the probable cause determination by the Tribal Court Judge when executing the April 22, 2020, Search Warrant.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis v. United States, 564 U.S. 229, 238–39 (2011) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good-faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

United States v. Marion, 238 F.3d 965, 969 (2001).

The record currently before the Court shows that law enforcement's good-faith reliance on the warrant issued authorizing the search of the Residence militates against suppressing the evidence obtained during the execution of the April 22, 2020, Search Warrant. In his affidavit in support of his application for a search warrant, Officer Veit presented sufficient facts indicating that Defendant and Co-Defendant Lussier were involved in the distribution of controlled substances, and they both lived at the Residence.

Accordingly, the affidavit in support of the April 22, 2020, Search Warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," nor did it render the warrant "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." See, gen., Notman, 831 F.3d at 1089. The executing officers had reason to believe that the Defendant was engaged in the ongoing sale of narcotics, and

9

it was objectively reasonable for them to rely on the determination of the issuing Judicial Officer, that evidence of such activity would be found at the Residence. See, United States v. Carpenter, 341 F.3d 666, 671–72 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence. Given the common sense appeal of this inference, and its acceptance by the issuing magistrate, it was not entirely unreasonable for [the executing officer] to believe the inference to be permissible."); United States v. Gibson, 928 F.2d 250, 253–54 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination."); United States v. Vann, No. 07-247 (JMR/RLE), 2007 WL 4372993, at *20 (Oct. 25, 2007) ("[The executing officer] had reason to believe that the Defendant was engaged in the ongoing sale of narcotics, and it was objectively reasonable for him to rely on the determination of the issuing Judicial Officer, that evidence of such activity would be found at the [defendant's residence]."). Thus, the Court concludes that the officers involved relied in good faith on the April 22, 2020, Search Warrant which had been issued by the Tribal Court Judge.

Therefore, this Court recommends that Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 79], be **DENIED**.

### III. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Pretrial Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant, [Docket No. 79], be **DENIED**, as discussed above.

Dated: June 22, 2021                                                                s/Leo I. Brisbois
                                                                                    Leo I. Brisbois
                                                                                    U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.